UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| CHARLES G. MIDDLETON III, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-CV-751-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| PNC BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on motion of the Defendant, PNC Bank, N.A. ("PNC"), to dismiss plaintiff's Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). For the reasons stated herein, the Court will **GRANT** defendant's motion.

**I.    BACKGROUND**

The basis of this action begins in 1933, with the execution of two trusts by Lawrence L. Jones, Sr. [R. 1-6, at pp. 2 – 3] The first trust was executed to benefit Lawrence L. Jones, Sr.'s three daughters and their progeny and has come to be known as the "Daughters' Trust" (or "Trust"). *Id.* at p. 2. This Trust remains intact today. The second trust, which is not at issue in this litigation, was executed to benefit Lawrence L. Jones, Sr.'s son, Lawrence L. Jones, Jr., and his progeny, which includes the plaintiff, Charles G. Middleton, III ("Middleton").

For more than eighty years, issues surrounding the Daughters' Trust have generated much litigation, culminating in the Complaint filed by Middleton in this action in December of 2017. An overview of prior litigation related to this case is essential to the disposition of the motion before the Court.[1]

---

[1] Much of the factual and procedural background recounted in this Opinion has been taken from the Jefferson Circuit Court's Opinion and Order entered on May 19, 2017 in the action *Commonwealth Bank & Trust Co., et al. v. Charles*

### A. History of Prior Litigation

In 2004, during PNC's trusteeship of the Daughters' Trust, PNC filed a declaratory judgment action ("2004 Declaratory Judgment Action") in Jefferson Circuit Court in Jefferson County, Kentucky (*PNC Bank, N.A. v. Helen Hickman Wickes*, Case No. 04-CI-002325). That action sought to determine whether the descendants of Lawrence L. Jones, Jr.[2] were included in the class of remainder beneficiaries to the Daughters' Trust. The action included the plaintiff as a party defendant. [R. 1-6, at p. 2]

Approximately three years later, in 2007, the plaintiff and Lawrence J. Middleton (together, "the Middletons"), both descendants of Lawrence L. Jones, Jr., filed an unrelated lawsuit in Jefferson Circuit Court against PNC (*Charles G. Middleton III and Lawrence J. Middleton v. PNC Bank, N.A., in its individual capacity for its actions as Trustee under the Lawrence L. Jones, Sr. Trust dated December 20, 1933*, Case No. 07-CI-10053). The complaint alleged that PNC breached its fiduciary duties in its administration of the Daughters' Trust. [R. 1-6, at p. 2] Throughout this Opinion, this action will be referred to as the "2007 Middleton Action."

The 2004 Declaratory Judgment Action was eventually settled in 2007 pursuant to the terms of a settlement agreement ("Settlement Agreement"). [R. 1-1] As part of the Settlement Agreement, the descendants of the Daughters' Trust paid a sum of money to the descendants of Lawrence L. Jones, Jr., which include the Middletons. In return, the Middletons gave up their

---

*G. Middleton, III, et al.*, Case No. 16-CI-2566, attached to Middleton's Complaint as "Exhibit F." [R 1-6] The parties have not disputed the accuracy of the Jefferson Circuit Court's recitation of facts and procedural history, or the summaries of the parties' legal arguments therein. Thus, for the purposes of the current motion to dismiss, this Court will accept the Jefferson Circuit Court's factual and procedural recitation as true.

[2] Lawrence Jones, Jr., is the son of Lawrence T. Jones, Sr., from whom the Middletons are direct descendants.

rights as potential remainder beneficiaries in the Daughters' Trust. [R. 1-6, at p. 3] The following provision was included in the Settlement Agreement:

> Charles G. Middleton, III and Lawrence J. Middleton hereby covenant and agree to hold harmless and indemnify the Daughters' Descendants, the Daughters' Trust and the Daughters' Trust under Will and the Joneses from any and all claims, causes of action, demands or suits of any kind arising directly or indirectly from any damages and/or claims asserted in [the 2007 Middleton Action], including but not limited to, any claims for attorneys' fees and costs and any claims by other Defendants in [the 2007 Middleton Action].

[R. 1-1, at ¶ 17] The Settlement Agreement was approved by court order in January 2008. [R. 1-6, at p. 4]

Despite giving up any potential interest as remainder beneficiaries in the Daughters' Trust, the Middletons were permitted to continue prosecuting the 2007 Middleton Action. The Middletons filed a motion to disqualify PNC's attorneys, arguing that PNC was not being sued in its capacity as trustee of the Daughters' Trust, but in its individual capacity. *Id.* The Middletons also argued that PNC's use of Trust funds to defend the 2007 Middleton Action created a disqualifying conflict of interest. *Id.* The Jefferson Circuit Court rejected this argument and found that the PNC attorneys were representing PNC as trustee. *Id.* The court likewise found that PNC, as trustee of the Trust, had the authority to pay its counsel with Trust funds. *Id.* Further, the Jefferson Circuit Court found that "pursuant to the Settlement Agreement, the Middletons will be required to refund to the Trust the attorneys' fees expended in PNC's defense, in the event that PNC prevails in the case at bar." *Id.* at p. 5.

Meanwhile, during the ongoing litigation of the 2007 Middleton Action against PNC, PNC was removed as trustee of the Daughters' Trust. Pursuant to an amended order entered in March of 2012 in the Probate Division of Jefferson District Court, the motion to appoint Commonwealth Bank & Trust ("CB&T") as successor trustee was granted. [R. 1-2, R. 1-6, at p.

5, n. 3] PNC was ordered to transfer the Daughters' Trust assets to CB&T. However, PNC also was ordered to "retain $1.325 million from the Trust in an interest-bearing money market account." *Id.* Of that amount, $75,000 would be "available to pay for expenses incurred by PNC in transferring the Trust to [CB&T]." The other $1.25 million was to be "available for PNC to pay costs and attorneys' fees incurred by PNC in [the 2007 Middleton Action], subject to review and further Order by the Circuit Court. . ." *Id.*

In December 2012, following significant briefing ("at least fifteen separate memoranda and oral argument"), the Jefferson Circuit Court granted summary judgment in favor of PNC and dismissed all of the Middletons' claims in the 2007 Middleton Action. [R. 1-6, at p. 5] PNC subsequently filed a motion to alter or amend to join CB&T as a party in the action. PNC also sought clarification and guidance from the Court on the Middletons' indemnity obligations, pursuant to the Settlement Agreement, after the final disposition of any appeals in the 2007 Middleton Action. *Id*. at pp. 5 – 6.

In March 2013, the Jefferson Circuit Court declined to join CB&T as a party to the 2007 Middleton Action, but did find against the Middletons. The Jefferson Circuit Court concluded:

> Since this Court found against the Middletons, PNC has prevailed in this action… As such, pursuant to the settlement agreement, the Middletons will have to reimburse the Daughters' Trust for all attorneys' fees, expenses and costs paid on behalf of PNC in defending this lawsuit. That obligation will certainly follow the final disposition of any appeals.

[R. 1-6, at p. 6] The court also outlined the procedure for enforcing the Middletons' indemnity obligation: the trustee was to send a letter to the Middletons requesting the payment of attorneys' fees. *Id.* If the Middletons did not pay the fees in response to the letter, the trustee was to institute a suit to recover the fees. The Court held that "any request by [CB&T] to reimburse the

Daughters' Trust and resulting action in the event that the Middletons do not pay would be separate and apart from the action before this Court." *Id.*

The Middletons appealed the Jefferson Circuit Court's grant of summary judgment against them in the 2007 Middleton Action,[3] which was affirmed by the Kentucky Court of Appeals in October of 2014. *Id.* at p. 7. The Middletons then filed a motion for discretionary review with the Supreme Court of Kentucky. This motion was denied in August, 2015. *Id.*

In December 2015, CB&T filed a Second Amended Notice of a Claim in Probate Court, seeking to enforce the indemnification provision of the Settlement Agreement in the amount of $1,016,550.46. [R. 1-9] Attached to the Second Amended Notice of a Claim was an affidavit of Bindu Rastogi, Vice President and Trust Advisor of PNC Wealth Management, stating that as of December 11, 2015, a total amount of $1,001,984.96 was paid by PNC from assets of the Trust in the defense of claims in the 2007 Middleton Action. *Id.*

Pursuant to the procedure that the Jefferson Circuit Court outlined in the 2007 Middleton Action, CB&T and PNC sent a letter to the Middletons requesting payment of the attorney's fees. [R. 1-6, at p. 8] When the Middletons refused, CB&T and PNC jointly filed a Complaint in Jefferson Circuit Court in June 2016 against the Middletons, alleging that the Middletons breached the indemnity provision of the Settlement Agreement, and sought indemnification. *Id.* Throughout this Opinion, this action will be referred to as the "2016 Indemnity Action."

In May 2017, the Jefferson Circuit Court granted the partial summary judgment motion of CB&T and PNC on the issue of liability in the 2016 Indemnity Action, finding that CB&T and

---

[3] During the pendency of the appeal of the 2007 Middleton Action, Lawrence J. Middleton passed away. Charles G. Middleton, III and Lawrence J. Middleton, Jr. were appointed Co-Executors of the Estate of Lawrence J. Middleton. [R. 1-6, at p. 6]

PNC[4] were "entitled to a judgment as a matter of law on the issue of [the Middletons'] liability to indemnify the Trust for all attorneys' fees, expenses and costs paid on behalf of PNC Bank in the [2007] Middleton Action." [R. 1-6, at p. 21] In October 2017, the Jefferson Circuit Court granted the final summary judgment motion of CB&T and PNC in the 2016 Indemnity Action. The Court held that the Middletons were obligated to indemnify the Trust in the amount of $1,081,293.61, plus interest. [R. 1-7, at p. 7] Middleton appealed these orders, now pending before the Kentucky Court of Appeals.

### B. The Complaint and Motion to Dismiss

In December 2017, Middleton filed the Complaint against PNC in the present action. Middleton claims that PNC wrongfully released escrow funds in contravention of the Probate Court's 2012 Amended Order, which ordered PNC to retain $1.25 million of the Daughters' Trust "for PNC to pay costs and attorneys' fees incurred by PNC in [the 2007 Middleton Action], subject to review and further Order by the Circuit Court. . ." [R. 1-2] The Complaint alleges that "PNC circumvented the Probate Court's [2012] Order to have a review of the fee issue, *i.e*, an award of fees against the Trust for payment of PNC's attorneys' fees and a review of such attorneys' fees for reasonableness and necessity . . . It is this wrongful conduct for which plaintiff now seeks compensatory and punitive damages." [R. 1, at pp. 2 – 3] The Complaint lists seven counts related to PNC's alleged wrongful conduct: common law indemnity; breach of fiduciary obligations as an escrow agent; violation of federal laws regarding accounts; conversion; unjust enrichment; non-economic damages; and breach of the covenant of good faith and fair dealing. Now before this Court is PNC's motion to dismiss for failure to state a claim, which argues that the plaintiff's Complaint is barred under the doctrine of res judicata.

---

[4] PNC joined the suit for recovery of its attorney's fees while it was trustee of the Trust, and joined the 2016 Indemnity Action as predecessor trustee for the Trust.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Conley v. Gibson*, 355 U.S. 41, 45 - 46 (1957)).

## III. DISCUSSION

PNC's motion to dismiss argues that Middleton's Complaint is precluded by the doctrine of res judicata. Specifically, PNC argues that Middleton's claims are barred by the Jefferson Circuit Court's adjudication of the claims in the 2016 Indemnity Action.

Under res judicata, or claim preclusion, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues" in subsequent actions. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981) (citation omitted). The doctrine also "prevents parties from litigating matters that should have been advanced in an earlier suit." *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (citation omitted). Further, claim preclusion applies across federal and state court systems. "If an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (internal quotation omitted). Federal courts "look to the state's law to assess the preclusive effect it would attach to that judgment." *Id.*

In Kentucky, "three elements must be met for the rule to apply: (1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Miller v. Administrative Office of the Courts*, 361 S.W. 3d 867, 872 (Ky. 2011). If these elements are not met, claim preclusion will not apply to bar the present action. The Court will examine each of the elements in turn.

A. **Identity of the Parties**

The first element of res judicata requires identity of the parties. For claim preclusion, Kentucky has "long adhered to the rule that even where a person is not a party, 'one who participates in litigation, and openly and actively assumes and manages its prosecution or defense' will be bound by the judgment." *Damron v. Family Bank*, No. 2009-CA-000398-MR, 2010 WL 323291, at *2 (Ky. Ct. App. Jan. 29, 2010) (citing *Harris v. Jackson,* 192 S.W.3d 297, 303 (Ky. 2006)). Kentucky courts looks beyond the "nominal parties and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered." *Id.* at *2 (quoting *McKenzie v. Hinkle,* 271 Ky. 587, 112 S.W.2d 1019, 1021–1022 (Ky.1938) (other citation omitted)).

PNC, as predecessor trustee of the Daughters' Trust, and Middleton were parties in the 2016 Indemnity Action. In the current action, the named parties are Middleton and PNC Bank, N.A. In his objection to the defendant's motion to dismiss, Middleton states that, "[t]he only element of the three [of res judicata] that is possibly met is the first one – identity of the parties." [R. 13, at p. 10] Yet, Middleton also states that "PNC Bank, N.A., is the defendant in the present

action, and not PNC in its capacity as 'Predecessor Trustee.'" *Id.* Middleton does not provide any law or argument to support this conclusory statement.

The Court finds that there exists an identity of parties between the 2016 Indemnity Action and the current action. Despite Middleton's contention that the current action is against PNC in its corporate capacity, the facts and circumstances indicate that, to the contrary, PNC has been sued in its capacity as predecessor trustee. The claims against PNC concern the release of Trust funds from an escrow account, created by the 2012 Probate Court Order, to pay PNC's attorneys' fees accrued in defending itself in the 2007 Middleton Action. Therefore, in all the background facts relevant to this claim, PNC was acting in its role as trustee, and subsequently as predecessor trustee.[5] At the very least, PNC's involvement in both actions has brought PNC in privity with CB&T such that the two entities, as the former and acting trustees of the same Trust, share a common interest in the recovery of the fees for defending the Trust in previous litigation. *Damron*, 2010 WL 323291, at *2 (citing *Harris,* 192 S.W.3d at 303). As such, an identity of parties exists between this action and the 2016 Indemnity Action.

## B. <u>Identity of the Causes of Action</u>

The second element of claim preclusion is identity of the two causes of action. This element can be satisfied by showing that claims were litigated in a prior action, or that the claims "could have been brought in the former action." *Miller*, 361 S.W.3d at 873. Closely related to claim preclusion is the rule against splitting a cause of action, which limits "all causes of action arising out of a single 'transaction' to a single procedure." *Coomer v. CSX Transp., Inc.*, 319

---

[5] During litigation of the 2007 Middleton Action, Middleton made a similar argument asserting that he was suing PNC in its individual capacity. The Jefferson Circuit Court disagreed, stating that Middleton's claims were "premised upon fiduciary duties that exist only by virtue of PNC's designation as Trustee and relate to actions taken by it as Trustee. As such, it does not appear that the Attorneys are representing PNC in its individual corporate capacity, but, instead, as Trustee." [R. 1-6, at p. 4]

S.W.3d 366, 371 (Ky. 2010) (citation omitted). This rule prevents parties from trying cases "piecemeal" and applies to "every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* (citation omitted). To determine whether a party has impermissibly split an action, Kentucky courts look "beyond the legal theories asserted to see if the two claims stem from the same underlying circumstances," or same transactional nucleus of facts. *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp.2d 808, 813 (W.D. Ky. 2003). "If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action." *KeyBank Nat'l Ass'n v. Allen*, 499 S.W.3d 693, 698–99 (Ky. Ct. App. 2016) (citing *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464–65 (Ky.1998)).

Exceptions exist for the rule against splitting a cause of action; this rule "does not apply to claims that have not yet accrued." *CSX Transp., Inc.*, 319 S.W.3d at 373. Additionally, a claim will not be barred if "the prior claim was based on matters which are 'not germane to, implied in, or essentially connected with the actual issues in the [second] case although they may affect the ultimate rights of the parties and might have been presented in the former action.'" *Bob Smith Chevrolet, Inc.*, 275 F. Supp.2d at 814 (citing *Watts v. K, S & H*, 957 S.W.2d 233, 237 (Ky. 1997)). Therefore, the pertinent questions are whether Middleton's current claims had accrued before judgment was entered in the 2016 Indemnity Action, and if the claims had accrued, whether the two actions stem from the same underlying circumstances such that the prior action was germane to, implied in, or essentially connected to the present claims.

First, the Court finds that Middleton's claims could have been brought as counterclaims in the 2016 Indemnity Action. In his response, Middleton states that the "[p]resent Indemnity

Action did not arise until the Circuit Court Judgment" on October 11, 2017, ordering Middleton to indemnify the Trust. [R. 13, at p. 9] Despite this assertion, the Court finds no reason why the current claims could not have been brought during the prior litigation. It is well-established in Kentucky that "a claim for indemnity need not await payment of the liability on which indemnity is sought but may be asserted in the original tort action." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) (citing *Robert F. Simmons Constr. Co., Inc. v. American States Ins. Co.*, 426 S.W.2d 441, 443 – 44 (Ky. 1968)). Middleton was not required to wait for the Jefferson Circuit Court's judgment in the 2016 Indemnity Case to bring his current claims.

Next, the Court looks to whether the actions concern the same controversy. While neither PNC nor Middleton parses each of Middleton's claims in his present Complaint, each of the seven counts centers on PNC's actions in relation to the release of funds from an escrow account created by the 2012 Amended Order in Probate Court. Middleton admits that he asserted as a defense in the 2016 Indemnity Action that PNC improperly released funds from the escrow account. Middleton's response to PNC's motion to dismiss states that the "lack of an award of attorneys' fees, review of such attorneys' fees for reasonableness, as well as the lack of an order in the 2007 [Middleton] Action, or the Probate Court compelling the Trust to pay were the defenses Middleton presented in the [2016] Indemnity Action for his position that the Trust had no indemnity claim against Middleton." [R. 13, at p. 11]

The Jefferson Circuit Court acknowledged Middleton's arguments in its May 2017 Opinion resolving the 2016 Indemnity Action. In its Opinion, the Jefferson Circuit Court stated:

> [The Middletons] make a Motion to dismiss, contending that . . . even if PNC Bank is deemed to have prevailed in the underlying action, such does not mean that it is entitled to fees and expenses, as there has been no hearing or finding, awarding fees against the Trust or the Middletons . . . [The Middletons] also argue that any payment by the Trust of fees and costs associated with the Middleton Action without a review and approval by the Circuit Court contravenes the well-settled law

> and the procedures established by the Jefferson Probate Court and as understood and agreed by PNC Bank and [CB&T], as shown by the PNC Bank removal proceeding before the Jefferson Probate Court.

[R. 1-6, at p. 9] The Jefferson Circuit Court rejected the Middletons' arguments when it found that Middleton was liable to indemnify the Trust.

Even though variations of Middleton's present claims were asserted as defenses in the prior action, Middleton nevertheless maintains that the actions do not stem from the same underlying controversy. For support, Middleton points to the facts and holding in *Bob Smith Chevrolet, Inc.*, 275 F. Supp.2d 808. The plaintiff there filed a lawsuit in state court for breach of a sale contract for a new car and demanded specific performance so that he could receive the vehicle's title, as well as transfer his trade-in vehicle's loan obligations to the dealership. The plaintiff later filed another lawsuit in federal court claiming an invasion of privacy and violations of the Fair Credit Reporting Act (FCRA) for the dealership's access of the plaintiff's consumer report. The United States District Court for the Western District of Kentucky, applying Kentucky law, held that "[t]hough both lawsuits arise out of the automobile sale, the similarities end there." The Court emphasized that the resolution of the contract claim "require[d] a trier of fact to ascertain what the agreed upon purchase price was," while the subsequent action "require[d] looking at [the dealership's] reasons and intentions when accessing the [p]laintiff's credit report." *Id*. at 814 – 815.

Middleton contends that, like action in *Bob Smith Chevrolet*, the current lawsuit "is a new cause of action based on separate and discrete events and wrongful acts." [R. 13, at p. 15] However, the Court finds that the circumstances in *Bob Smith Chevrolet* are distinguishable from those in this case. As previously stated, Middleton's defenses from the prior action form the basis for the present lawsuit. [R. 1-6, at p. 9] If the Court had accepted Middleton's arguments

in the 2016 Indemnity Action, Middleton would not have been ordered to indemnify the Trust. Conversely, in *Bob Smith Chevrolet*, the plaintiff's subsequent FCRA and invasion of privacy claims were entirely unrelated to his prior breach of contract action, and these subsequent claims could not have formed the basis for a defense in the prior action. In this case, such a distinction illustrates just how the 2016 Indemnity Action and the present lawsuit arise from the same controversy.

In sum, Middleton's claims in this action arise from the same common transactional nucleus of facts as the claims in the 2016 Indemnity Action. At the center of both actions is the issue of the attorneys' fees incurred by PNC in defending the 2007 Middleton action, including the parties' respective obligations surrounding indemnification of the Trust and the procedure under which indemnification was to be accomplished. Further, the claims brought in this action are merely permutations of the defenses Middleton asserted in the 2016 Indemnity Action, repackaged as affirmative claims.

Lastly, it is not dispositive that Middleton's Complaint may assert different legal theories than those raised in the prior action, as claim preclusion does not only apply to claims actually litigated, but to those which "should have been advanced in an earlier suit." *Wheeler* 807 F.3d at 766. For these reasons, there exists an identity of the causes of action between Middleton's present Complaint and the 2016 Indemnity Action.

### C. **Final Judgment on the Merits**

The 2016 Indemnity Action resulted in a final judgment on the merits. As previously stated, the Jefferson Circuit Court in the 2016 Indemnity Action found that CB&T and PNC were "entitled to a judgment as a matter of law on the issue of [the Middletons'] liability to indemnify the Trust for all attorneys' fees, expenses and costs paid on behalf of PNC Bank in the [2007]

Middleton Action." [R. 1-6, at p. 21] A subsequent order by the same court found that the Middletons were obligated to indemnify the Trust in the amount of $1,081,293.61, plus prejudgment interest. [R. 1-7, at p. 7] This order was final and appealable.

Though Middleton has appealed both orders from the Jefferson Circuit Court, a judgment is still deemed a final judgment on the merits for purposes of claim preclusion despite the pendency of any appeals.[6] Additionally, while Middleton asserts that this element of claim preclusion is not met, he does not provide any law or argument to support this contention. ("The only element of the three that is possible met is the first one – identity of the parties.") [R. 13, at p. 10] Therefore, the Court finds that the 2016 Indemnity Action resulted is a final judgment on the merits.

### D. Summary of Res Judicata Elements

Even construing Middleton's Complaint as true, there exists an identity of parties and identity of causes of action between the 2016 Indemnity Action and the present lawsuit. Additionally, the 2016 Indemnity Action resulted in a final judgment on the merits. Because the three elements of claim preclusion are met, Middleton's Complaint is barred and therefore he has failed to state a claim pursuant to Rule 12(b)(6).

---

[6] While it does not appear that Kentucky courts have addressed whether the pendency of an appeal affects the finality of a judgment under the doctrine of claim preclusion, Kentucky courts have found that the pendency of an appeal does not destroy the finality of a judgment under claim preclusion's companion doctrine, issue preclusion. *See Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997) ("Although Stemler's appeal is pending in that case, the pendency of an appeal does not destroy the finality of the judgment for the purposes of issue preclusion under Kentucky law.") (citing *Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. Ct. App. 1991)). The doctrines of issue preclusion and claim preclusion both stemming from the theory of res judicata, it is presumable that Kentucky courts would interpret the "finality of a judgment" similarly under both theories. Middleton has not argued otherwise.

## IV. CONCLUSION

For the reasons stated, the Court will **GRANT** the motion of the defendant to dismiss for failure to state a claim under the doctrine of res judicata. Middleton's Complaint will be **DISMISSED WITH PREJUDICE**.

An Order will be entered in accordance with this Opinion.

November 13, 2018

*Claria Horn Boom*

Claria Boom, District Judge
United States District Court

cc: Counsel of record